SUMMERS, Justice.
Defendant Johnny Clarence Brooks was indicted by the Terrebonne Parish grand jury on October 1, 1974 for the first degree murder of Genii Caraleta Boston on September 21, 1974. He was found guilty on March 5, 1975 and sentenced to death. Three assignments of error are relied upon in this appeal.

Assignment 3

On voir dire examination defense counsel challenged prospective juror Do- *1198 mangue for cause because he understood Domangue to say that he felt the State had a case against the defendant. The trial judge then interrogated Domangue and ruled that Domangue’s answer was the result of a misunderstanding. He denied the challenge. However, when the defense again objected the judge excused the juror. This assignment is without merit.

Assignment 5

While testifying for the State, Jimmy Boston, husband of the victim, indicated that on his return to their store he noticed the cash register drawer was open and only two pennies remained. He was also asked if it was customary for his wife to keep cash in the register of the grocery store. He replied that he was not familiar with her practices because he worked for Exxon away from the store. She ran it completely.
Later Jimmy Boston was asked by the prosecutor if he could tell from any inventory he may have made exactly how much cash may have been taken from the register the day of the murder. When defense counsel objected that no evidence established that an inventory had been made, the question was rephrased: “Did you make any attempt to determine how much money may or may not have been taken on that morning?” The witness then answered, “approximately $30.00 or $40.00.” Furthermore he explained that he could not state exactly how much money was in the cash drawer: “It could have been $50.00, it could have been $100.00, it could have been $40.00.”
This interrogation was laced with defense objections that the court was permitting the State’s witness to speculate. Actually, the witness frankly stated, in substance, that he did not know how much money was in the cash register at the time of the murder. This development was favorable to the defense because the testimony did not support the State’s attempt to prove robbery at the time of the killing in order to sustain a conviction of first degree murder. Jimmy Boston’s testimony regarding the amount of money in the cash register did not support the robbery theory, for he could not say that there was money in the cash register at the time of the killing. Therefore, insofar as that phase of his testimony is concerned no prejudice to the defense was involved.
Apparently the jury was satisfied from other circumstantial evidence that a robbery did in fact take place. For one thing, Boston’s testimony that the open cash register contained only two pennies strongly indicated the cash register had been hurriedly emptied of whatever money it did contain.
There is no merit to this assignment.

Assignment 11

At the conclusion of the State’s case, the court granted a request to permit the jury to examine the physical evidence introduced during the trial. The items were handed to the jurors by the assistant district attorney trying the case. He was in turn assisted by John Walker, a recent law school graduate who was to become an assistant after he was admitted to the bar.
At some point during the jury’s inspection of the evidence, Roy Chauvin, a juror, asked Walker about a possible typographical error on one of the exhibits. The problem seemed to be whether the exhibit was marked “S-22” or “S-20” to coincide with a list of exhibits being viewed by the jury. Walker, in an effort to be helpful, responded that he felt the mark was just an exhibit number. This is all Walker could recall telling Chauvin. The entire incident was completely inadvertent. In no way does the record demonstrate, nor is it claimed, that the State sought an advantage from this brief verbal exchange. Nor does the record support a finding, even by inference, that defendant was prejudiced by this event. Defendant’s motion for a mistrial was therefore properly denied.
This assignment is without merit.
After the death penalty was imposed for this September 21, 1974 murder, the United States Supreme Court decided Roberts v. Louisiana, 428 U.S. 325, 96 S.Ct. *1199 3001, 49 L.Ed.2d 974 (1976). By that 1976 decision the death penalty prescribed by Article 30 of the Criminal Code, in effect on September 21, 1974, was declared unconstitutional. Then, before argument of this appeal during October 1977, this Court on October 14, 1976, rendered its decision in State v. Jenkins, et al., La., 340 So.2d 157. By the Jenkins decision this Court fashioned an appropriate sentence for persons validly convicted but unconstitutionally sentenced to death as a result of the Roberts decision: The most severe penalty established by the legislature for criminal homicide at the time of the offense which the Court could presume to be constitutional in the wake of Roberts v. Louisiana. This penalty is imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years. The Jenkins decision is dis-positive of the issue. See State v. Tyler, 342 So.2d 574 (La.1977). Defendant’s death sentence must be set aside and he must be resentenced.
For the reasons assigned, the conviction of Johnny Clarence Brooks is affirmed, but the death sentence is set aside, and the case is remanded to the trial court with instructions to resentence defendant to imprisonment at hard labor for life without eligibility for parole, probation or suspension of sentence for a period of twenty years.